The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Haigh and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * * * * * * * * *
The Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. Plaintiff, who was 32 years old and lived in Lexington, NC, at the time of the hearing before Deputy Commissioner Haigh, is a high school graduate who spent a month and three days in the Air Force before being honorably discharged. Plaintiff worked several odd jobs prior to working for High Point Sprinkler. He worked for Burger King, installed air conditioning equipment, and also worked at a convenience store.
2. Plaintiff began working for defendant-employer in 1985 as a pipe fitter apprentice. Defendant-employer was engaged in the business of installing of fire protection equipment including fire hydrants, underground pipes, and sprinkler systems in buildings. Plaintiff's job with defendant-employer included delivering materials to job sites, unloading pipes and other materials and installing fire protection equipment. Most of plaintiff's duties were performed at ceiling level (at heights ranging 8 feet and higher) using ladders, scaffolding and motorized lift systems.
3. On 8 April 1991, plaintiff was working for defendant-employer on location at USAir in Winston-Salem, North Carolina. His crew was installing a sprinkler system throughout the building at a height of approximately 30 feet. Plaintiff was on the ground moving scaffolding when a 15 1/2 inch pipe rolled off the scaffold, fell 18 to 23 feet and struck him on the back of his head, neck, and shoulders. This constituted a compensable injury by accident which was admitted by defendants through a Form 21 filed with and approved by the Industrial Commission.
4. Plaintiff was seen on the day of his accident at the Emergency Room of Baptist Hospital with a history of being struck on the head by a metal pipe that fell about 20 feet. After the examination, plaintiff was released and told to take one day off work. After taking one day off, plaintiff returned to his normal duties, but continued to experience constant headaches.
5. Approximately two months after his 8 April 1991 injury by accident, plaintiff experienced a seizure and two blackouts. On 19 May 1991, plaintiff informed his sister that he wasn't feeling well, and shortly thereafter plaintiff fell to the ground, with his complexion turning blue and gray. Plaintiff was taken to North Carolina Baptist Hospital Emergency Room where he was diagnosed with a post concussive syndrome.
6. Plaintiff continued to experience constant headaches and ringing in his ears during the summer of 1991, and began treatment with Dr. Thompson at the neurology clinic at North Carolina Baptist Hospital. He was also referred, by Dr. Thompson, to the Pain Control Center.
7. On 21 May 1991, Dr. Thompson performed a CT scan on plaintiff. Afterwards, he scheduled plaintiff to undergo a sleep deprived EEG which took place on 7 June 1991. Because the EEG was in normal limits, he was treated with medication and returned to work on 27 June 1991. Plaintiff took vacation time from 27 June 1991 to 8 July 1991, and then returned to his normal duties for defendant-employer. In October, 1991, plaintiff was again seen by Dr. Thompson for headaches, and pain in the neck, right arm and shoulder.
8. In October, 1991, plaintiff began working for defendant-employer in Jamaica. Plaintiff worked three weeks, took off a week, and returned to work another three weeks. He came home in December, 1991, but returned to Jamaica again in January, 1992. During this time, he continued to experience headaches.
9. During the summer of 1992, while still working for defendant-employer, plaintiff was assigned to work construction at the Winston-Salem City Jail. He felt uneasy about his work and climbing various heights. Two of his supervisors, Brett Shaw and Terry Collins, voiced concerns regarding his behavior, reporting that plaintiff did not seem to be himself and that something was wrong with him.
10. On 19 October 1992, at the Winston-Salem City Jail, plaintiff was working in a holding cell attempting to drill a hole in the corner of the wall. As he was applying pressure to the electric hammer drill, the ladder began to leave its original position and he fell approximately eight feet, hitting his hands and head on metal brackets on the wall, destroying the safety glasses he was wearing. Plaintiff was taken to the hospital by his foreman, Brett Shaw. Plaintiff was treated for a contusion to the forehead and bruised wrist, and released.
11. This incident on 19 October 1992 constituted an injury by accident arising out of and in the course of his employment with defendant-employer.
12. Defendants were on actual notice of this accident, defendant-employer having filed a Form 19 in connection therewith, and defendants having received written notice of it in plaintiff's answer to interrogatories. Defendants were not prejudiced in any way in their investigation of the incident on 19 October 1992.
13. As the result of the incident on 19 October 1992, plaintiff has been unable to return to work for defendant-employer since sometime in November 1992.
14. Thereafter, plaintiff requested the carrier to reinstate his temporary total disability benefits. The carrier refused, and an I.C. Form 33 was filed, leading to the hearing before Deputy Commissioner Haigh.
15. Following the 19 October 1992 injury, plaintiff began seeing psychiatrist Dr. Jerry Noble for assistance in dealing with his mounting depression. He was subsequently referred to Dr. Peter Rosenquist, in the Department of Neuropsychiatry at North Carolina Baptist Hospital. Plaintiff has been examined by Dr. Rosenquist approximately six times. He continues treatment with Dr. Noble.
16. As the result of the 19 October 1992 injury by accident, plaintiff's activities have been limited. He has not been employed. However, he attempts to work around his land and drives on occasion. Plaintiff had neighbors assist him when he was performing activities such as planting trees, hanging lattice work on his deck, mowing his yard, and building two doghouses.
17. During the spring of 1993, plaintiff spent time with his father-in-law, Gilbert R. Thompson, at T T Radiator, a business then owned by Mr. Thompson. Plaintiff also assisted his father-in-law in the radiator shop in 1984 or 1985, when his father-in-law was unable to work. Plaintiff performed only menial tasks, and was permitted to come and go from the shop at his own discretion. Plaintiff was not an employee of T T Radiator.
18. Defendants hired a private investigator to observe plaintiff's activities while at T T Radiator Shop. The investigator testified that he observed, and videotaped, plaintiff carrying two-by-fours, physically moving equipment and working on radiators. Plaintiff's treating psychiatrist, Dr. Rosenquist, reviewed the tapes and found that plaintiff was able to perform only simple and repetitive tasks and appeared to be following these instructions.
19. Based on the videotapes, Deputy Commissioner Haigh determined that plaintiff was capable of work and was therefore not credible in his testimony about his mental impairment. However, the Full Commission has reviewed the tapes and determines that they do not show that plaintiff was capable of being gainfully employed. In reviewing the videotapes the Full Commission is in as good a position as the Deputy Commissioner in judging credibility based on what is shown in the tape. Additionally, plaintiff's treating psychiatrist testified that having seen the videotape he would not hire him based on what was shown there and that, based on viewing the videotape, he still believes that plaintiff is totally incapable of working.
20. Plaintiff has been examined by Dr. Rosenquist because of his cognitive impairment growing out of the 8 April 1991, injury by accident and the 19 October 1992, injury by accident. Dr. Rosenquist determined that as the result of plaintiff's condition he was incapable of returning to work.
21. Plaintiff's inability to return to work was caused by his 8 April 1991 injury by accident, and was exacerbated by the 19 October 1992 injury by accident.
22. As the result of the 8 April 1991 injury by accident and the 19 October 1992 injury by accident, plaintiff has been incapable of earning wages in his former position with defendant-employer or in any other employment from November 1992 through the present.
23. Aetna Life Casualty Ins. Co. was the carrier on the risk for the 8 April 1991, injury by accident. The record is inconclusive as to whether defendant-carrier was on the risk for the 19 October 1992 injury by accident.
24. Plaintiff's average weekly wage on 8 April 1991 and 19 October 1992, was $414.00, yielding a compensation rate of $276.00.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on 8 April 1991 and 19 October 1992, was $414.00, yielding a compensation rate of $276.00. G.S. § 97-2(5).
2. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 8 April 1991. G.S. § 97-2(6). Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 19 October 1992 which exacerbated his condition. Id.
3. As the result of plaintiff's injuries by accident, he is entitled to temporary total disability compensation at the rate of $276.00 per week from November 1992 through the present and continuing until further order from the Commission. G.S. § 97-29.
4. As the result of plaintiff's injuries by accident, he is entitled to payment for all reasonable medical expenses incurred or to be incurred.
G.S. § 97-25.
5. Counsel for plaintiff is entitled to a reasonable attorney's fee of the compensation awarded herein.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Haigh and enters the following:
ORDER
This matter is hereby REMANDED to a Deputy Commissioner for a hearing during which the only issue to be decided is the determination of the legally responsible party liable for the temporary total disability and medical compensation to which plaintiff is entitled. Following this determination, the Deputy Commissioner shall file a Opinion and Award in accordance with this Opinion and Award by the Full Commission.
Further, defendants are ORDERED to submit to the Deputy Commissioner a record of the exact date in November, 1992 on which plaintiff last worked for defendant-employer.
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ BERNADINE S. BALLANCE COMMISSIONER